Meier Steinbrink, Spec. Ref.
This action is quite simple. It is not at all involved. The plaintiffs in this case seek the order of injunction of the court as against the defendant and they ask for such injunction enjoining and restraining him from directly or indirectly, either as an individual on his own account or as an officer, employee, agent or salesman of David C. Outer-bridge & Co., Inc., or any other firm or corporation from entering into or engaging in the business of soliciting applications for or negotiating contracts of insurance other than contracts of life insurance during the period up to and including the 24th of September, 1964 within the territory set forth in plaintiffs’ , Exhibit 1, which is a 55-mile radius from Brooklyn, New York.
*757 They also ask that they recover monetary damage in such amount as may be determined by plaintiffs, so much as they have sustained, and by his breach of the Avritten agreement, and for punitive damage.
The request for punitive damage will be denied. There is, however, a damage clause in plaintiffs ’ Exhibit 1 Avhieh cannot be ignored.
Briefly the facts are these. The representatives of the plaintiffs first interviewed the defendant while he was in his senior year and toward the close of it as a student at BroAvn University, from which he was graduated with a degree of Bachelor of Arts. After interviewing him, he was put on the payroll on or about January 21, 1959 and then was sent down to Brooklyn. At their main office in Brooklyn he was interviewed and then there was a contract of employment entered into, which is in evidence as plaintiffs’ Exhibit 1. That contract of employment recites that “ in consideration of my employment as a sales representative of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company, or of both of said companies, each hereinafter referred to as the Company, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, the undersigned ’ ’.
In paragraph A there is an agreement on his part to surrender back 11 all letters, applications, receipts, records and other documents and papers, including expirations secured through his efforts or copies of any of same relating to the business of the companies.” These undoubtedly belong to the company, and if there are any such they will have to be surrendered to the plaintiffs.
Paragraph B of the employment contract is the one that provides that he promises and agrees that if 1 £ for any reason my employment as a sales representative of the company shall terminate, I will not directly or indirectly, either as an individual on my own account or as an officer, employee, agent or salesman of any firm or corporation or otherwise, enter into or engage in the business of insurance other than life insurance, or directly or indirectly suggest, advise or attempt to persuade any person, firm or corporation known by me to be a policyholder of the company to discontinue his or its policy or policies issued by the company or to cancel any such policy and to replace it with a policy issued by any other insurance company.”
There then follows a paragraph in which there is set forth as one of the terms in the event of a breach that he agrees to pay to the company, in addition to costs and disbursements provided by law, an additional sum of $500 for attorney’s fees, and other *758 expenses, of litigation. I pause here to say that that is not a penalty clause; it is clearly one of liquidated damage and is very small indeed, considering what is involved in this case.
It further provides that the agreement shall continue in force for a period of 24 months after the termination of his, that is David C. Outerbridge’s, employment whether as a sales representative of the ¡company, and during that period the terms shall apply withii the territory of the city or town in which is located the office of the company to which he was assigned, and through a geographical area within 25 miles of the corporate limits of such city or town, whichever it may be.
He signed this agreement on February 2, 1959 after he was sent down here from the Boston office. Nobody compelled him to sign it. He had a perfect right to refuse to sign it, and then the company could determine whether they would still employ him or not. But nevertheless he signed it.
Much evidence ¡ was offered here, and much of it excluded, because it had no relevancy or materiality to what we were trying. I have said before in the course of an opinion which I wrote in the Appellate Term of this Department that complexity finds its simple solvent when the fundamental facts are understood, and that applies with force in this case.
It does not do for him to say: “ I either had to sign this or I would not be employed. ’ ’ That is not undue influence, nor is it duress. He could have gone to any other company that he pleased, but he signed the agreement and he is bound by its terms.
That was clearly held by the Court of Appeals in the case of Matter of Stone (272 N. Y. 121, 124) where Judge 0’Be.ibu, for a unanimous court, wrote the opinion, in the course of which, towards the end, he said: “ ‘ Ordinarily, the signer of a deed or other instrument, expressive of a jurai act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not Raterial, (Wigmore on Evidence, § 2415.) If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.’ (Pimpinello v. Swift & Co., 253 N. Y. 159,162,163.) ”
Here I have no hesitation in saying that whatever the motivation was, there was a flagrant violation of his agreement of employment. He is an intelligent man. There is not the slightest evidence here of any undue influence or duress such as is pleaded in a separate defense. He has breached the agreement and he has invited the terms which he may regard as a penalty or not In any event, he is bound by the agreement.
*759 It is only fair to say, in justice to him, that he was not discharged. So far as this record discloses, his service was satisfactory, but he resigned voluntarily by letter, which is in evidence as plaintiffs’ Exhibit 6. His letter of resignation was dated September 24,1962 and it was acknowledged by the district sales manager on September 25, 1962.
It necessarily follows that there must be judgment here for the plaintiffs, and the injunctive order and judgment which I shall sign shall be in the broad terms of the prayer for the relief, in addition to which, since the defendant is now present in court, I now issue the injunction against him that from this moment on he may not, directly or indirectly, either through sales agent, his corporation or any other way, in any way engage in any kind of insurance business excepting life insurance.
Let me call his attention, and that of his counsel, to the case of Miller v. Smerkins (243 App. Div. 780). I will give you the facts in that case because it was tried before me and at its conclusion I made an oral order from the Bench restraining the defendant from interfering in any way with his property until the judgment could be entered. The case ended on a Friday afternoon. In spite of that, on Saturday morning he filed a petition in bankruptcy. There then was brought on before me a motion to punish him for contempt of the oral injunction issued from the Bench. My recollection is that I ordered him to prison for either 10 or 20 days and also imposed a fine. The Appellate Division unanimously affirmed. There is the authority for that.
So I caution Mr. Outerbridge not to violate in any degree this injunction which I now have issued orally. If he does, I shall deal with him on motion made by the plaintiffs.
There will be judgment for the plaintiffs. Wherever there is any dispute in the facts, and I do not know of a single fact in this case that is disputed, the facts will be found in favor of the plaintiffs, and they will have judgment for that, together with the $500 provided for, which is the liquidated damage which goes to counsel for the counsel fee, which is small indeed, and there will be one bill of costs.